# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOHN W. BUCKLEY,                                       AMENDED COMPLAINT

              Plaintiff,

                                                    **Case No. 07 CIV. 6775**
   -against-                                                    **(SCR)(GAY)**


PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION, PHILIPS SEMICONDUCTOR
MANUFACTURING, INC., NXP SEMI-
CONDUCTORS AND PHILIPS ELECTRONICS
NORTH AMERICA DEFINED BENFIT PENSION PLAN.

              Defendants.                              **JURY TRIAL REQUESTED**

------------------------------------------------------------X

Plaintiff, JOHN W. BUCKLEY, as and for his Amended Complaint, alleges the following on information and belief:

### INTRODUCTION

1. This is an action for injunctive and declaratory relief, back pay, front pay, unpaid bonuses, stock options, pension and health insurance benefits, liquidated damages, compensatory and punitive damages, attorney's fees, costs and other relief to redress employment discrimination on the basis of age, breach of contract, and breach of New York State wage payment laws. This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. ("ADEA"), which incorporates by reference Section 16(b), 29 U.S.C. §216(b), of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq.; the New York State Payment Law, McKinney's Labor Law, Section 190 et seq. (the "Labor Law"), and the

New York State Human Rights Law, McKinney's Executive Law, Section 290 et seq. (the "Human Rights Law").

2. This is also an action to redress discrimination against plaintiff for purposes of interfering with plaintiff's rights to pension and health insurance benefits provided by defendants, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343 (a)(4) and 2201, as well as 29 U.S.C. §626(b) and (c) and 29 U.S.C. 1132. In addition, plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a).

4. Venue is properly laid in this district pursuant to 28 U.S.C. §1391 (b) in that the unlawful employment practices alleged were committed within this district.

## PARTIES

5. During all relevant times herein, plaintiff was a resident of the State of New York, County of Dutchess, and was employed by defendants in Hopewell Junction, New York.

6. Defendant Philips Electronics North America Corporation (hereinafter "defendant PENA") is a for profit corporation authorized to do business in New York State, is engaged in the business of manufacturing semiconductors, system solutions and software for numerous consumer products, including mobile phones, medical devices, personal media players, TVs, set-top boxes, identification applications and a wide range

of other electronic devices, and maintains a place of business in Hopewell Junction, New York.

7. Upon information and belief, defendant PENA employs over 20 employees and is an employer within the meaning of Section 11 (b) of the ADEA, 29 U.S.C. ∫630(b); ERISA , 29 U.S.C. ∫1002 (5) and Section 292 of the Human Rights Law.

8. Defendant Philips Semiconductor Manufacturing, Inc. (hereinafter "defendant PSMI"), is a for profit corporation authorized to do business in New York State, is engaged in the business of manufacturing semiconductors, system solutions and software for numerous consumer products including mobile phones, medical devices, personal media players, TVs, set-top boxes, identification applications, cars and a wide range of other electronic devices, and maintains a place of business located in Hopewell Junction, New York.

9. Upon information and belief, defendant PSMI employs over 20 employees and is an employer within the meaning of Section 11(b) of the ADEA, 29 U.S.C. ∫630(b); ERISA, 29 U.S.C. ∫1002(5) and Section 292 of the Human Rights Law.

10. Defendant NXP Semiconductors (hereinafter "defendant NXP") is a for profit corporation authorized to do business in New York State, is engaged in the business of manufacturing semiconductors, system solutions and software for numerous consumer products including mobile phones, medical devices, personal media players, TVs, set-top boxes, identification applications, cars and a wide range of other electronic devices, and maintains a place of business located in Hopewell Junction, New York.

11. Upon information and belief, defendant NXP employs over 20 employees and is an employer within the meaning of Section 11(b) of the ADEA, 29 U.S.C. ∫630(b);

ERISA, 29 U.S.C. §1002(5) and Section 292 of the Human Rights Law. Defendant NXP is a successor to defendant PSMI.

12. Upon information and belief, Defendant Philips Electronics North America Corporation Defined Benefit Pension Plan (hereinafter "PENA DB Plan") is a benefit plan within the meaning of ERISA, 29 U.S.C. §1002.

13. Collectively, defendants PENA, PSMI, NXP and PENA DB Plan are an integrated enterprise. All are responsible for the illegal conduct directed at plaintiff.

## ADMINISTRATIVE HISTORY

14. Plaintiff filed an employment discrimination charge against defendants and their predecessors based on age with the United States Equal Opportunity Commission (hereinafter "EEOC") on or before February 22, 2005, which was within 300 days of the last incident of discrimination.

15. On or about March 28, 2007, following a thorough investigation, the EEOC issued a Determination, which stated its conclusion that probable cause existed to believe that defendants' reasons for terminating plaintiff's employment were pretextual and that plaintiff was subjected to age discrimination.

16. On or about April 30, 2007, the EEOC issued a Notice of Right to Sue to plaintiff, which Notice was received by plaintiff shortly thereafter. Plaintiff filed a timely Complaint on or about July 27, 2007. This Amended Complaint was initiated with the April 1, 2008 permission of the Court.

## FACTUAL ALLEGATIONS

17. Plaintiff was hired as General Counsel by the defendants' predecessor, MiCRUS, in April 1995 in Hopewell Junction, New York.

18. Defendants acquired MiCRUS in October 2000 and continued plaintiff's employment as General Counsel of defendant PSMI.

19. In October 2000, defendants credited both plaintiff's IBM Corporation and MiCRUS Defined Benefit Retirement Plans length of service and earnings accruals toward his participation in defendant PENA's Defined Benefit Retirement Plan.

20. During his ten year career at the Hopewell Junction facility, plaintiff was consistently appraised as an Outstanding Contributor. Defendants repeatedly granted plaintiff bonuses, stock options and in 2002, a $25,000 retention award for securing a $38 million tax credit for defendants.

21. On December 11, 2001, defendants published a client satisfaction survey of its 28 United States' Corporate, Subsidiary and Divisional Legal Departments. Plantiff's one man Legal Department in Hopewell Junction was one of only three surveyed departments to receive a perfect 5.0 average score.

22. On March 3, 2003, defendant PENA's General Counsel advised plaintiff that it could not list plaintiff's Hopewell Junction site separately on the 2002 survey results depriving plaintiff of the opportunity to have his performance ranked in comparison to his peers.

23. In March 2004, defendant PSMI General Manager, Lloyd Young, advised plaintiff that defendants were transforming their 28 Legal Departments into a "shared services" Legal Department where an expert in one area of the law could advise multiple defendant subsidiaries and divisions.

24. In March 2004, Lloyd Young further advised plaintiff that he could enhance his Philips' career by offering his Government Relations and State and Local Tax expertise

to other Philips' entities under the "shared services" program.

25. On April 2, 2004, plaintiff met with Thomas Patton, defendant PENA's Vice President of Government Relations, to discuss plaintiff providing advice and counsel to Patton's Washington, D.C. office.

26. During the April 2, 2004 meeting, Patton advised plaintiff that he would recommend to defendant PENA's General Counsel, Sies Plokker, that plaintiff's duties as defendant PSMI's General Counsel be expanded to include support of defendant PENA's Government Relation's Office.

27. Sies Plokker's subsequent decision not to expand plaintiff's job description to include the Government Relations responsibility was based on plaintiff's age.

28. In May 2004, defendant PSMI General Manager, Lloyd Young, advised plaintiff that he had been named a "Key Employee" for 2004 and would receive an enhanced bonus.

29. Lloyd Young showed plaintiff a copy of his Key Employee notification letter and stated that the letter would be mailed to plaintiff in June 2004. Key Employee status is designed to confer enhanced bonus percentages and stock options on employees.

30. In May 2004, Lloyd Young also advised plaintiff that, effective January 1, 2005, plaintiff would report to Sies Plokker as part of the "shared services" transition. Plaintiff's shared services position would include his current Hopewell Junction facility responsibilities as well as support of remote locations.

31. In June 2004, defendant PSMI named Wendy Arienzo to replace Lloyd Young as its General Manager.

32. In her June 2004 inaugural presentation to defendant PSMI employees, Arienzo

6

announced in a "PowerPoint" presentation that plaintiff had been removed as PSMI General Counsel and was on a special assignment. Arienzo had not previously discussed this change with plaintiff.

33. The "PowerPoint" organization chart box designated "Special Assignment" listed only plaintiff's name and two other employees, both aged 40 or older.

34. Defendants' June 2004 decision to remove plaintiff from the General Counsel position in a public forum, without prior notice, was designed to humiliate plaintiff, drive him to resign and was based on plaintiff's age.

35. In August 2004, defendants notified plaintiff that, effective December 31, 2004, defendants were terminating him.

36. Defendants' decision to terminate plaintiff was part of a larger plan designed to terminate older Hopewell Junction facility employees in general and, in particular, to target for termination those older employees who had also participated in the IBM Corporation and MiCRUS Defined Benefit Pension Plans ("Legacy Plan Participants") and had their length of service and salary credits transferred to defendant PENA's Defined Benefit Pension Plan.

37. Defendants targeted these classes of older employees for termination in anticipation of selling the Hopewell Junction facility.

38. During the time period between January 2001 and December 2005, defendant PENA's Defined Benefit Pension Plan was under-funded.

39. On information and belief, defendant PENA's Defined Benefit Pension Plan continued to be under-funded through 2006.

40. During its June 10, 2002 Defined Benefit Pension meeting at the Hopewell

Junction facility, defendants represented to the Legacy Plan participants that the PENA Defined Benefit Pension Plan would accrue interest on the PRP assets at a 4% per annum rate.

41. Defendants failed to accrue interest on the Personal Retirement Provision ("PRP") component of the Legacy Plan assets which further contributed to the under funded status of the PENA Defined Benefit Pension Plan.

42. Defendants failed to provide Legacy Plan Participants with annual Statements of PENA Defined Benefit Pension Plan Assets and Liabilities in 2002 and for 2004 through 2007 as required by ERISA.

43. Defendant's failure to provide the required ERISA annual statements prevented Legacy Plan Participants from analyzing and identifying defendant pension plan funding problems.

44. Defendants were motivated to terminate plaintiff, a Legacy Plan Participant, before he could attain his full PENA Defined Benefit Pension Plan and health insurance benefits to mitigate the effects of the defendant's persistent under funding of its Plans.

45. Defendants were also motivated to terminate other Legacy Plan Participants before they could attain their full PENA Defined Benefit Pension Plan and health insurance benefits to mitigate the effects of defendants' persistent under funding of its Plans.

46. Defendants were further motivated to interfere with plaintiff's, (and similarly Situated Legacy Plan Participants) attainment of his full PENA Defined Benefit Pension Plan and health insurance benefits to make the Hopewell Junction facility a more attractive acquisition target.

47. During the late Summer and Fall of 2004, defendants' Hopewell Junction facility executives and other Defendant executives met at offsite locations in the Hopewell Junction area as an "ETOC" group.

48. On information and belief, "ETOC" is a defendant acronym for "Employee Termination Organizing Committee".

49. The purpose of the ETOC was to identify the Hopewell Junction facility employees to be terminated in Fall 2004, Winter 2004-2005 and Fall 2005.

50. ETOC selected employees for termination in Fall 2004, Winter 2004-2005 and Fall 2005 based upon their age and/or their status as Legacy Plan participants..

51. Defendants' termination of plaintiff on December 31, 2004 was part of ETOC's extended employee termination plan and, in particular those Hopewell Junction terminations occurring in December, 2004, mid-January 2005 and February 2005.

52. Defendants' termination of plaintiff on December 31, 2004 was timed to precede defendant PENA's transition to the "shared services" Legal Department organization model on January 1, 2005.

53. On September 14, 2004 plaintiff met with Sies Plokker to discuss plaintiff's employment situation. Plokker advised plaintiff that plaintiff was well qualified to participate in defendants' "shared services" Legal Department.

54. On September 14, 2004, Sies Plokker further advised plaintiff that defendant executives would not permit him to extend plaintiff's employment for one additional day, from December 31, 2004 to January 1, 2005 to enable plaintiff access to Defendants' shared services Legal Department.

55. Plaintiff was the only attorney of over 70 attorneys employed by defendant Legal Departments to be terminated during the January 1, 2005 transition to the "shared services" Legal Department.

56. Plaintiff was the only attorney of over 70 attorneys employed by defendant Legal Departments who participated in the Legacy Component of defendant PENA Defined Benefit Pension Plan.

57. At the time of plaintiff's termination, there were at least two employment requisitions in defendants' online "Careers" database for attorneys. Both positions contained job specifications performed by plaintiff in the Hopewell Junction facility.

58. On December 8, 2004 plaintiff met with Wendy Arienzo, James Casey, General Counsel for defendants' Semiconductor Division, and Steven Miner, defendant PSMI Human Resources Director. During this meeting, Casey, who attended via conference call tie-in, advised plaintiff that he would not be interviewed or considered for either open position.

59. Defendants' refused to consider plaintiff for either open job because of his age and his participation in the Legacy Plan component of the defendant PENA Defined Benefit Pension Plan and his participation in the defendants' health insurance plan.

60. On December 8, 2004, defendants offered plaintiff a Severance Agreement and Release. This release did not comply with the provisions of the Older Workers Benefit Protection Act ("OWBPA") and therefore, is invalid. Defendants terminated plaintiff as part of a much larger reduction in force at the Hopewell Junction facility. The OWBPA mandates that plaintiff, as part of the larger body of terminated employees should have received 45 days to consider defendants' Severance Agreement and Release. Defendants

offered plaintiff only 21 days to consider said Agreement and Release. In addition, defendants failed to provide the OWBPA required information concerning the age and job titles of those employees chosen for termination.

61. Despite plaintiff's track record of superior performance and significant accomplishments, defendants in New York, California and their corporate officers in the Netherlands repeatedly refused to respond to or even acknowledge receipt of plaintiff's Fall 2004 written communications in which plaintiff addressed his objections to defendant's proposed termination. Defendants' refusal to acknowledge plaintiff's business communications and requests for assistance indicate a pre-determined decision to terminate plaintiff based on his age and his participation in the Legacy Component of defendant PENA Defined Benefit Pension Plan.

## AS AND FOR A FIRST CAUSE OF ACTION

62. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 to 61 of this Amended Complaint as if fully set forth herein.

63. Defendants' acts, practices and policies described herein constitute willful discrimination against plaintiff on the basis of his age, thereby denying him equal employment opportunities in violation of U.S.C. §621 *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION

64. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 to 63 of this Amended Complaint as if fully set forth herein.

65. Defendants' acts, practices and policies described herein constitute willful and intentional discrimination against plaintiff on the basis of his age, in violation of the Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION

66. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 to 65 of this Amended Complaint as if fully set forth herein.

67. Defendants' acts, practices and policies described herein constitute willful and intentional discrimination against plaintiff for the purpose of interfering with the attainment of his full rights under the PENA Defined Benefit Pension Plan in which plaintiff was enrolled because of his status as an employee of defendants in violation of §510 of ERISA, 29 U.S.C. §1140.

## AS AND FOR A FOURTH CAUSE OF ACTION

68. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 to 67 of this Amended Complaint as if fully set forth herein.

69. Defendants' acts, practices and policies described herein constitute discrimination against plaintiff for the purpose of interfering with the attainment of his rights under the health insurance benefit plan in which plaintiff was enrolled because of his status as an employee of defendants in violation of §510 of ERISA, 29 U.S.C. §1140.

## AS AND FOR A FIFTH CAUSE OF ACTION

70. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 to 69 of this Amended Complaint as if fully set forth herein.

71. Defendant's failure to acknowledge plaintiff's 2004 designation as a "key employee" and defendants' subsequent 2004 failure to pay plaintiff an enhanced bonus was in violation of express promises made both orally and in writing, and constitutes a breach of contract.

## AS AND FOR A SIXTH CAUSE OF ACTION

72. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 to 71 of this Amended Complaint as if fully set forth herein.

73. The 2004 "key employee" bonus promised to plaintiff constitutes "wages", as defined by Section 190 of the Labor Law.

74. Defendants' failure to pay the "key employee" bonus constitutes a violation of the Labor Law, including Section 191 of the Labor Law.

75. Defendants' failure to pay the "key employee" bonus was willful as that term is defined in Section 198 of the Labor Law, entitling plaintiff to liquidated damages in the amount of 25% of the amount due.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare, adjudge and decree that defendants willfully discriminated against plaintiff on the basis of his age, in violation of 29 U.S.C.∫ 621 et seq.

2. Declare, adjudge and decree that defendants willfully and intentionally discriminated against plaintiff on the basis of his age, in violation of the Human Rights Law of the State of New York.

3. Declare, adjudge and decree that defendants willfully discriminated against plaintiff for the purpose of interfering with the attainment of his right to full PENSA Defined Benefit Plan pension benefits provided by defendants in violation of ∫510 of ERISA, 29 U.S.C. 1140.

4. Declare, adjudge and decree that defendants willfully discriminated against

plaintiff for the purpose of interfering with the attainment of his right to health insurance benefit plan in which plaintiff was enrolled because of his status as an employee of defendants, in violation of §510 of ERISA, 29 U.S.C. §1140.

5. Declare, adjudge and decree that defendants committed a breach of contract in violation of express promises made both verbally and in writing.

6. Declare, adjudge and decree that defendants willfully violated the Labor Law by failing to pay the 2004 "key employee" bonus.

7. Order defendants to reinstate plaintiff with full seniority and all other benefits, or, in the alternative, award plaintiff front pay, plus interest thereon, that plaintiff is unable to earn as a result of defendants' willful discriminatory actions.

8. Order defendants to pay plaintiff damages in the amount of all back pay, lost stock options, lost bonuses and lost benefits, plus interest thereon, that plaintiff lost as a result of defendants' willful discriminatory actions.

9. Order defendants to pay plaintiff damages in "an additional amount of liquidated damages equal to the value of all back pay, plus interest thereon, that plaintiff lost as a result of defendant's willful actions, pursuant to 29 U.S.C. §626(b) incorporating 29 U.S.C. §216, a provision of the Fair Labor Standards Act.

10. Order defendants to pay an "additional amount as liquidated damages equal to twenty-five percent of the wages found to be due" pursuant to Labor Law Section 198 (1-a).

11. Enjoin defendants from engaging in further discriminatory and other unlawful actions against plaintiff.

12. Award plaintiff compensatory damages.

13. Award plaintiff punitive damages.

14. Award plaintiff all costs and reasonable attorney fees incurred in connection with this action.

15. Award plaintiff such other and further relief as this Court may deem just and proper.

Dated: April 21, 2008
       Hopewell Junction, New York.

_____
John W. Buckley
60 Woodcrest Drive
Hopewell Junction, New York 12533
Tel: (845) 264-5212
Fax: (914) 962-3473

**CERTIFICATE OF SERVICE**

**Case No. 07 Civ. 6775(SCR)(GAY)**

I, JOHN W. BUCKLEY, hereby declare under penalty of perjury, that on April 22, 2008, I served a copy of the foregoing Amended Complaint upon Michael P. Benenati, Esq. whose address is Bleakley Platt & Schmidt, LLP, One North Lexington Avenue, White Plains, New York 10601 via first class mail.

Dated: April 22, 2008
       Hopewell Junction, New York

_____
John W. Buckley
60 Woodcrest Drive,
Hopewell Junction, NY 12533
Tel: (845) 264-5212
Fax: (914) 962-3473