**EXHIBIT E**



# U.S. Equal Employment Opportunity Commission
## New York District Office

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TTY (212) 336-3622
FAX (212) 336-3625
1-800-669-4000

Respondent: PHILIPS SEMICONDUCTORS MANUFACTURIN
EEOC Charge No.: 160-2005-01281
FEPA Charge No.:

**Exhibit C**

Mar 02, 2005

John Buckley
50 Woodcrest Drive
Hopewell Junction, NY 12533

Dear Mr. Buckley:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ ]   Title VII of the Civil Rights Act of 1964 (Title VII)

[X]   The Age Discrimination in Employment Act (ADEA)

[ ]   The Americans with Disabilities Act (ADA)

[ ]   The Equal Pay Act (EPA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[X]   Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

> New York State Division Of Human Rights
> Federal Contract Unit
> One Fordham Plaza, 4 Fl.
> Bronx, NY 10458

Please notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

Electra Yourke
Supervisory Investigator
(212) 336-3751

Office Hours: Monday - Friday, 8:30 a.m. - 5:00 p.m.
TDD: 1-800-669-6820
www.eeoc.gov

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 160-2005-01281 |

_____ and EEOC
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Date of Birth |
|---|---|
| John Buckley | 10/25/52 |

| Street Address | City, State and ZIP Code |
|---|---|
| 50 Woodcrest Drive, | Hopewell Junction, NY 12533 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Philips Semiconductors Manufacturing | 1000+ | 845-902-1400 |

| Street Address | City, State and ZIP Code |
|---|---|
| Hudson Valley Research Park 2070 Route 52, P.O. Box 1279, | Hopewell Junction, NY 12533 |

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Philips Electronic North America | 1000+ | 212-536-0626 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1251 Avenue of the Americas, | New York, NY 10020 |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest

December 31, 2004

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached.

RECEIVED
FEB 2 2 2005
EEOC-NYDO-CRTIU

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date     Charging Party Signature | |

## AFFIDAVIT OF JOHN BUCKLEY



John Buckley, being duly sworn, deposes and says:

1. I was terminated from my position as General Counsel of the Fishkill plant of Philips Semiconductor Manufacturing, Inc. an affiliate of Philips Electronics North America ("PENA"), effective December 31, 2004. As set forth more fully below, I believe I was terminated because of my age, 52, in violation of the Age Discrimination in Employment Act.

2. I had been an employee of Philips Semiconductors and its predecessor organizations for over twenty-six years. I started out with IBM in 1978, in the corporate Tax Department. My last position at IBM was as Senior Tax Attorney. My performance at IBM was always considered very good, if not exceptional.

3. In 1994, IBM entered into a joint venture with Cirrus Logic, creating a partnership called MiCRUS. I became an employee of MiCRUS, and was its General Counsel from 1995 to 2000. My performance at MiCRUS was always considered very good, if not exceptional.

4. When MiCRUS was formed, all employees of IBM who went to MiCRUS took their full pension benefits to MiCRUS, which created its own defined benefit plan. All of the assets of the IBM plan covering the now MiCRUS employees were put into that defined benefit plan. I and the other employees also retained their length of service, as though we were still employed by IBM. Thus, as of February 2000, I had 22 years of service in the MiCRUS plan.

5. On or about June 15 2000, Philips, KV purchased MiCRUS. I became an employee of Philips Semiconductor Manufacturing, Inc. and General Counsel of its' Fishkill plant, a position I held until December 31, 2004.

6. When the transaction occurred, the MiCRUS plan was terminated, and I became a vested participant in the Philips North America defined benefit plan. It is my understanding that I retained my length of service, so that as of June 2000 I had over 22 years of service credit in the Philips' plan.

7. The Philips plan contains a "Rule of 85" benefit calculation formula. Pursuant to this rule, if a participant's age and length of service add up to 85, the participant can take early retirement starting at the age of 55, with full retirement benefits, including retiree health benefits.

8. My performance at Philips Semiconductor Manufacturing, Inc. was always appraised as very good if not excellent. I regularly participated in

the company's Outstanding Contributor bonus pool, and always received very high marks from my boss, Lloyd Young, on my reviews. In fact, in my last review, which I received in early 2004, I was rated at the highest level in most categories, and received an overall evaluation of "2". Out of the 900 employees in Fishkill, I believe only two other individuals, and only one of them a senior executive like me, received such a high overall rating.

9. As a result of my 2003 performance rating, I was told by Lloyd Young that I would participate in the bonus payout to be made in 2004. He even showed me a letter to this effect.

10. In May 2004, I was advised that PENA was transitioning to a "shared services" legal department, effective January 1, 2005. I was told at the time by Lloyd Young that I would be reporting to Sies Plockker, PENA's Senior Vice President and General Counsel, in a position that would include support of the Fishkill facility and other remote support responsibilities. Mr. Plokker advised Mr. Young that he was preparing a job description that would be available for me some time over the summer.

11. In August 2004, without any warning or notice, and despite my long-time service and excellent performance, I was told by James Casey, General Counsel of Philips Semiconductors, that my position in Fishkill would be eliminated, and that I would be terminated effective December 31, 2004.

12. As set forth below, I believe that the decision to terminate my employment was based on my age, in violation of federal law.

13. I believe that I am the only attorney to have lost a job as a result of the transition to the "shared services" legal department. In fact, at the same time I was told of my termination, there were numerous positions that were vacant and available. For example, there were two employment requisitions for legal positions in the Philips Semiconductors' "Careers" database. Both positions were within Philips Semiconductors, and both involved tasks and duties identical to those I had performed as General Counsel of the Fishkill plant. When I spoke to Mr. Casey about these positions, however, he told me that I was "ineligible" to apply for these jobs, since they were located in California. He never inquired as to whether I would be interested in relocating. More importantly, he never explained why it was imperative that these positions be located in California. Indeed, the whole rationale behind a "shared services" legal department is that attorneys can handle multiple matters on a remote basis throughout the country.

14. My termination at the end of 2004 also has a financial benefit for Philips.

I had made it known that my plan was to remain at Philips until age 55, which would qualify me for an unpenalized retirement under the "Rule of 85". I would have been able to retire at any time thereafter with a full pension of over $70,000 per year, plus retiree medical benefits. With my forced termination in 2004, I am deprived of that opportunity, and will lose over 1 million dollars in pension and benefits as a result. I believe Philips was motivated by a desire to avoid these financial obligations when it made the decision to terminate my employment. Under benefits funding laws, as I understand them, the termination of my employment within three years of retirement has a significant financial benefit to Philips.

15. Additional evidence that age was a factor in my termination is that numerous other senior executives who are in their mid to late 50's have been terminated or forced out of the company as well, at or about the same time I was terminated.

16. I was also advised that I would not be receiving the bonus that Lloyd Young had told me I would receive earlier in the year. There is no rational basis for excluding me from receiving this bonus. I can only conclude that it was somehow motivated by my age.

17. Before my termination I made numerous attempts to resolve these issues internally with various senior executives at Philips. To my chagrin, not only were my efforts unsuccessful, they were completely ignored.

18. As part of my termination I was offered a severance package of twenty-six weeks pay, in exchange for signing a release of claims. After a great deal of thought and consultation, I decided to sign the agreement, even though I believe I have been discriminated against. I did not have another job, and financially I could not afford to pass up the package that I was offered (I have one daughter in law school, one in college and one in high school).

19. Nevertheless, it is possible that the release I signed is not in compliance with the Older Workers Benefits Protection Act ("OWBPA"). It is my understanding that several other individuals were terminated and offered severance packages at or about the same time that I was terminated, and that there has been a reduction in force in Fishkill. It is my understanding that the OWBPA requires that under such circumstances, I should have been given 45 days to consider the release, and I should have been given information about the age and job titles of individuals eligible or selected for termination, and the ages and job titles of individuals not eligible or selected for termination. I was only given twenty-one days to consider the release, and no such information was provided to me.

20. Moreover, I was told that the agreement was a take it or leave it deal, and that I could not negotiate any changes or enhancements to the package I was offered. This is evident not only by statements from Philips lawyers and executives, but from the way in which I was treated when I raised what I considered reasonable points with respect to my situation. As stated above, my requests were not just rejected. They were completely ignored.

21. For these reasons as well as others I am prepared to address with the EEOC, I believe that I have been discriminated against on the basis of my age, in violation of federal law.

_____
John Buckley

Sworn to before me
this 16th day of February, 2005

_____
Notary Public

Rosemarie S Giammatteo
Notary Public, State of New York
No. 01GI61156650
Commission Expires 09-13-2008



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, New York 10004-2112
Telephone: (212) 336-3646
FAX: (212) 336-3633

## AGREEMENT TO MEDIATE

CHARGE NUMBER: _160 2005 01281_

This is an agreement by the parties to participate in mediation concerning the charge of
_____ v. _____

We understand that mediation is a voluntary process, which we may terminate at any time.

The parties and, if they desire, their representatives are invited to attend the mediation sessions. No one else may attend without the permission of the parties and the consent of the mediator.

The mediator will not function as the representative of either party. However, the mediator may assist the parties in understanding their rights and the terms of any proposed settlement agreement. Each party acknowledges having been informed of the right to consult with an attorney of his or her choosing before signing any agreement.

We agree that the mediator has the discretion to terminate mediation at any time if he or she believes that the case is inappropriate for mediation or that an impasse has been reached.

We hereby affirm that we will come to the EEOC with the authority to enter into a binding agreement, and that we will enter the mediation process with a good faith intent to settle this dispute during the EEOC mediation session.

We recognize that the mediation process is a confidential proceeding and agree to abide by the Confidentiality Agreement which is attached.

The parties acknowledge that if a settlement is reached as a result of the mediation, the assigned mediator is required to report to EEOC any benefits received. This information is reported only for purposes of providing aggregate data to the EEOC for Mediation program evaluation purposes, and the individual terms of the agreement will not be disclosed to the public.

_____  _____   _____  _____
Charging Party              Date       Respondent                  Date


_____  _____   _____  _____
Charging Party's Representative  Date  Respondent's Representative  Date