# EXHIBIT G

LEXSEE 2006 U.S. DIST. LEXIS 69591

**RAYMOND TIRONE, on behalf of himself and as a representative of a class of persons similarly situated, Plaintiffs, -against- NEW YORK STOCK EXCHANGE, INC., et al., Defendants.**

05 Civ. 8703 (WHP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2006 U.S. Dist. LEXIS 69591; 40 Employee Benefits Cas. (BNA) 1375*

September 28, 2006, Decided
September 28, 2006, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by, Motion denied by *Tirone v. NYSE, Inc., 2007 U.S. Dist. LEXIS 54255 (S.D.N.Y., July 27, 2007)*

**COUNSEL:** [*1] Peter George Eikenberry, Esq., Law Office of Peter G. Eikenberry, New York, NY, for Plaintiffs.

Deidre Ann Grossman, Esq., Proskauer Rose LLP, New York, NY.

**JUDGES:** WILLIAM H. PAULEY III, U.S.D.J.

**OPINION BY:** WILLIAM H. PAULEY III

**OPINION**

*MEMORANDUM AND ORDER*

WILLIAM H. PAULEY III, District Judge:

Plaintiff Raymond Tirone ("Tirone") brings this putative class action against the New York Stock Exchange, Inc. ("NYSE" or "Exchange") and the Welfare Benefit Plan of the New York Stock Exchange (the "Plan") (collectively, the "Defendants") pursuant to §§ 502 and 510 of the Employee Retirement and Income Security Act of 1974, as amended ("ERISA"), *29 U.S.C. §§ 1132, 1140*. Plaintiffs, all disabled former NYSE employees whose health care and life insurance benefits were terminated by Defendants, seek recovery of unpaid benefits and reinstatement as eligible beneficiaries under the Plan. Presently before this Court are Defendants' motion to dismiss Plaintiffs' *§ 510* claim and Plaintiffs' motion for summary judgment on that claim. For the reasons set forth below, Defendants' motion is granted and Plaintiffs' motion is denied.

*BACKGROUND*

The [*2] NYSE sponsors the Plan which provides, *inter alia*, disability, retirement, health and life insurance benefits for managerial and professional employees. (Amended Consolidated Complaint, dated Jan. 4, 2006 ("Compl.") P 3.) The NYSE also provides a Summary Plan Description ("SPD") that purports to summarize the Plan's terms. (Declaration of Alice M. MacDermeid, dated Feb. 14, 2006 ("MacDermeid Decl.") Ex. E.)

Tirone worked at the NYSE from 1969 until 1990, serving as a Senior Trading Investigator and Market Surveillant during the final six years of that period. (Compl. PP 14, 21, 31.) In early 1990, Tirone commenced a medical leave of absence after he began experiencing seizures. (Compl. P 31.) When the NYSE determined that Tirone could not return to work, it classified him as "totally disabled." (Compl. AP 34.) The Plan provides: "After 24 months of disability, totally disabled means that you are unable to earn more than 60 percent of your indexed predisability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified . . ." (Compl. P 35.) In mid-1990 Tirone was approved for

Case 7:07-cv-06775-SCR-GAY   Document 23-8   Filed 08/26/2008   Page 3 of 5

Page 2
2006 U.S. Dist. LEXIS 69591, *2; 40 Employee Benefits Cas. (BNA) 1375

long-term disability benefits payable by Unum Insurance [*3] Company ("Unum"), NYSE's long term disability insurance carrier, on the basis of a total disability. (Compl. PP 38, 40.) From 1990 to the present, Tirone has received from Unum long-term disability benefits and a benefit equal to 60% of his last-earned salary. (Compl. AP 40.) Until March 31, 2005, Tirone also participated in the Select Plus HMO provided by United Health Care (the "Health Plan") and the Group Life Insurance Plan provided by MetLife (the "Life Insurance Plan"). (MacDermeid Decl. Exs. A-D.)

The SPD contains the following provision regarding amendments to the Plan:

> The Exchange intends to continue the plans, but the Board of Directors of the Exchange reserves the right, in its sole and absolute discretion, to amend, modify or terminate any and all provisions of the plans (including any related documents or policies), in whole or in part, at any time and for any reason . . . including . . . changing the eligibility rules [and] eliminating particular types of benefits . . .

(MacDermeid Decl. Ex. E1 at D00006.) Effective January 1, 2005, Defendants adopted a purported leave of absence policy (the "Leave of Absence Policy" or the "Policy") pursuant to which [*4] the employment status of an individual on medical leave is discontinued if the individual cannot resume work within two years of commencing the leave. (Compl. AP 57.) The parties dispute whether the Leave of Absence Policy represents an amendment to the Plan or an employment policy that is unrelated to the Plan. In any event, Tirone was notified of the Leave of Absence Policy on November 9, 2004. (Compl. AP 47). The Policy had the effect of discontinuing Tirone's benefits under the Health Plan and Life Insurance Plan as of March 31, 2005 if he did not return to the NYSE by that date. [1] (Compl. PP 50-51.) Because Tirone was unable to return, the NYSE ended his health and life insurance coverage. [2] (Compl. AP 10.)

1 Although Tirone would have been required to return by January 1, 2005 under a strict application of the Policy, the NYSE claims to have "gratuitously" extended this deadline to March 31, 2005. (Compl. P71.)

2 Tirone continued to receive long term disability benefits and 60% of his salary after March 31, 2005. (Compl. PP 40, 50.)

[*5] On October 13, 2005, Tirone commenced an ERISA class action against the NYSE on behalf of himself and at least 14 other former NYSE employees whose health and life insurance benefits were discontinued by the Leave of Absence Policy. Tirone v. New York Stock Exchange, Inc., No. 05 Civ. 8703 (WHP). On December 23, 2005, Tirone commenced a similar action against the NYSE Employee Benefits Plans Committee and John Martino, the administrator of the Plan. Tirone v. Martino, No. 05 Civ. 10742 (WHP). By Order dated January 9, 2006, this Court consolidated the actions pursuant to Fed. R. Civ. P. 42(a). On January 10, 2006, Tirone filed the Amended Consolidated Complaint seeking the following damages pursuant to ERISA §§ 502 and 510: (1) compensation for the coverage Plaintiffs have been denied as a result of the Leave of Absence Policy; (2) reinstatement as active NYSE employees on medical leave or, alternatively, payment of future health and life insurance coverage; and (3) costs and attorneys fees. (Compl. APAP 82-83, 89-90.)

DISCUSSION

I. *Motion to Dismiss and Summary Judgment Standards*

With regard to Defendants' motion to dismiss [*6] pursuant to *Rule 12(b)(6)*, this Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in Plaintiffs' favor. *Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998)*. A court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*; accord *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)*. Dismissal is proper when the plaintiff fails to plead the basic elements of a cause of action. See *Wright v. Giuliani*, No. 99 Civ. 10091 (WHP), 2000 WL 777940, at *4 (S.D.N.Y. 2000). The issue on a motion to dismiss "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support claims." *Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)* (citation omitted).

On a motion to dismiss, a court's "consideration is limited to facts stated on the face of the complaint, [*7]

Case 7:07-cv-06775-SCR-GAY    Document 23-8    Filed 08/26/2008    Page 4 of 5

Page 3
2006 U.S. Dist. LEXIS 69591, *7; 40 Employee Benefits Cas. (BNA) 1375

in documents appended to the complaint or incorporated in the complaint by reference, and to such matters of which judicial notice may be taken." *Allen v. West Point-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Such documents are deemed part of the complaint. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may also consider "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Here, it is undisputed that the Court may rely on benefits plan documents referenced in the Amended Consolidated Complaint without converting Defendants' motion to dismiss into a motion for summary judgment. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

Plaintiffs' motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [*8] issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir. 1997). In determining whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255.

II. *Analysis*

Section 510 of ERISA, as codified at *29 U.S.C. § 1140*, provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of [*9] any right to which such participant may become entitled to under [an employee benefit plan].

*29 U.S.C. § 1140*. The law is unsettled regarding the extent to which a *§ 510* claim must implicate the employer-employee relationship. *See Choi v. Mass. Gen. Physicians Org.*, 66 F. Supp. 2d 251, 254 (D. Mass. 1999) (collecting cases). Although the Second Circuit has not squarely addressed this issue, courts in this District have held that *§ 510* only proscribes interference with the employment relationship. *Devlin v. Transp. Commc'ns Int'l Union*, 1997 U.S. Dist. LEXIS 13916, No. 95 Civ. 0742 (JFK), 1997 WL 570512, at *6 (S.D.N.Y. Sept. 15, 1997); *see also Downes v. J.P. Morgan Chase & Co.*, 2004 U.S. Dist. LEXIS 10510, No. 03 Civ. 8991 (GEL), 2004 WL 1277991, at *5 (S.D.N.Y. June 8, 2004); *DeSimone v. Transprint USA, Inc.*, 1996 U.S. Dist. LEXIS 5700, No. 94 Civ. 3130 (JFK), 1996 WL 209951, at *3 (S.D.N.Y. Apr. 29, 1996); *see also DeGrooth v. Gen. Dynamics Corp.*, 837 F. Supp. 485, 489 (D. Conn. 1993). Thus, "plaintiffs must allege that defendant took some type of adverse employment action to interfere with the attainment of their benefit rights under the plan. [*10] " *Maguire v. Level Sights, Inc.*, 2004 U.S. Dist. LEXIS 13566 at 5, No. 03 Civ. 2294 (GBD), 2004 WL 1621187, at *2 (S.D.N.Y. July 19, 2004). "[A] fundamental prerequisite to a *§ 510* action is an allegation that the employer/employee relationship, and not merely the . . . plan, was changed in some discriminatory or wrongful way." *Deeming v. Am. Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990); *see also DeGrooth*, 837 F. Supp. at 489; *Blessing v. J.P. Morgan Chase & Co.*, 394 F. Supp. 2d 569, 583 (S.D.N.Y. 2005).

Here, the Amended Consolidated Complaint does not allege an adverse employment action. Plaintiffs did not work for the NYSE when their Health Plan and Life Insurance Plan benefits were discontinued. Although they kept their "employee" status until the Leave of Absence Policy was implemented, they did so only to receive benefits, and their "termination" affected them only insofar as it deprived them of those benefits. As then-District Judge Cabranes explained in *DeGrooth*, "[a] reduction of benefits, in and of itself, is not adverse employment action for purposes of *Section 510*." *DeGrooth*, 837 F. Supp. at 489; *see also* [*11] *Blessing*, 394 F. Supp. 2d at 583 ("*Section 510* requires more than interference with an employee's attainment of benefits."). The Amended Consolidated Complaint, at bottom, alleges denial of benefits in violation of the Plan. That the alleged denial of benefits entailed a change in Plaintiffs' administrative status as an "employee" is of no

Case 7:07-cv-06775-SCR-GAY   Document 23-8   Filed 08/26/2008   Page 5 of 5

Page 4

2006 U.S. Dist. LEXIS 69591, *11; 40 Employee Benefits Cas. (BNA) 1375

consequence for the purposes of *Section 510*. See *Mansfield v. Lucent Techs.*, 2005 U.S. Dist. LEXIS 20036, No. 04 Civ. 3589 (MLC), 2005 WL 2175452, at *3 (S.D.N.Y. Sept. 6, 2005) (dismissing § 510 claim asserted by former employee whose long term disability benefits were discontinued after the employee was misclassified as a "retired employee" instead of an "active employee"); *cf. Downes*, 2004 WL 1277991, at *5 (holding that no cause of action lies under § 510 for employee misclassified as an "independent contractor" instead of an "employee"); *Schwartz v. Independence Blue Cross*, 299 F. Supp. 2d 441, 450 (E.D. Pa. 2003) (same). Plaintiffs contend that Defendants violated § 510 by singling out Plan participants on long term disability for termination of benefits. However, this is not the sort of "discrimination" [*12] that gives rise to § 510 liability. "[A]llocating benefits among employees . . . does not constitute adverse employment action." *DeGrooth*, 837 F. Supp. at 489. "While [a reduction that disproportionately affects a certain group of participants] may indeed be arbitrary, [it is] not actionable under § 510, in the absence of further allegations of an employer's specific intent to discriminate against individual employees." *DeGrooth, 837 F. Supp. at 489*; see also *McGann v. H&H Music Co.*, 946 F.2d 401 (5th Cir. 1991) (affirming summary judgment dismissing § 510 claim based on reduction of benefits to certain plan participants); *Owens v. Storehouse, Inc.*, 984 F.2d 394 (11th Cir. 1993) (same); but see *Lessard v. Applied Risk Mgmt.*, 307 F.3d 1020, 1024-27 (9th Cir. 2002). If every change to a welfare plan that disparately impacted participants were considered discriminatory, "employers who reduce or terminate coverage for certain categories of illness . . . would face near-automatic *section 510* liability." *Owens, 984 F.2d at 400*.

Plaintiffs also assert that Defendants failed [*13] to follow the SPD's procedures for Plan amendments and, therefore, the Leave of Absence Policy is void *ab initio*. ERISA § 402(b)(3), *29 U.S.C. § 1102(b)(3)*, requires that employee benefit plans provide "a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." The SPD identifies the NYSE Board of Directors as the entity authorized to "change[] eligibility rules" and "eliminate[] particular types of benefits" under the Plan. (MacDermeid Decl. Ex. E1 at D00006.)

Plaintiffs contend that the Board did not approve the Leave of Absence Policy and, therefore, the termination of Plaintiffs' health and life insurance benefits violated § *403(b)(3)*. Assuming Plaintiffs are correct, a flawed Plan amendment alone does not give rise to liability under § *510*. Plaintiffs identify no case in which a § *510* plaintiff was excused from showing an adverse employment action because the defendant violated § *403(b)(3)*. Rather, Plaintiffs must meet all of § *510*'s requirements regardless of the circumstances. Plaintiffs might have other avenues of recovery for the alleged violation of the Plan's amendment procedure, but they [*14] cannot recover under § *510* on the facts of this case.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' second claim for relief, asserted under *ERISA § 510*, is granted, and Plaintiffs' motion for summary judgment on that claim is denied.

Dated: September 28, 2006

New York, New York

SO ORDERED:

WILLIAM H. PAULEY III

U.S.D.J.